**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HDI GLOBAL INSURANCE COMPANY**, individually and as subrogee of Son Qun Huang and Ka Na Cao Huang, 161 North Clark Street, 48th Fl. Chicago, IL 60601 | CIVIL ACTION NO.: |
| Plaintiff, | |
| v. | |
| **NORGUARD INSURANCE COMPANY** 39 Public Square Wilkes Barre, PA 18703 | **CIVIL ACTION COMPLAINT** **JURY TRIAL DEMANDED** |
| Defendant, | |
| and | |
| **NEW K & K LAUNDROMAT INC.** 5413 Avenue N Brooklyn, New York 11234 | |
| and | |
| **JIE CAO** 2075 E 14TH STR Brooklyn, NY 11229 | |
| Nominal Defendants. | |

## CIVIL ACTION COMPLAINT

AND NOW COMES the plaintiff, HDI GLOBAL INSURANCE COMPANY, by and through its undersigned counsel, to file this Complaint for declaratory and equitable relief, breach of contract, and civil damages, and in support thereof, sets forth and avers the following:

## PREAMBLE

This matter arises out of an accident which occurred on December 12, 2018, within certain premises leased by New K & K Laundromat Inc. ("K&K") from Son Qun Huang and his wife, Ka Na Cao Huang (collectively, the "Huangs") located at 5413 Avenue N, Brooklyn, New York (the "Leased Premises"). At that time and place, Jie Cao ("Cao") was allegedly standing on an A-frame ladder and performing certain repairs to K&K's roll-down gate when he fell from that ladder (the "accident"). K&K had retained Li Yong Lin, a "handyman", to perform these repairs without prior notice to the Huangs, and Cao was either in the employ of Li Yong Lin or had volunteered his services to Li Yong Lin at the time of the alleged accident. Cao subsequently filed a lawsuit against the tenant in possession, K&K, and the owner-out-of-possession, the Huangs, seeking to recover damages for injuries he sustained in that alleged accident in the lawsuit styled, *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019 (the "Cao Lawsuit").

At the time of the accident, K&K, as the tenant, and the Huangs, as the landlord, were parties to a lease agreement which, among other things, obligated K&K to procure and maintain commercial general liability insurance, with limits of at least $1 Million per occurrence, in favor of the Huangs as additional insureds on a primary and non-contributing basis, and to otherwise defend and save the Huangs harmless from and against any liability or expense arising from the accident. K&K attempted to fulfill those insuring obligations by purchasing a commercial general liability policy from defendant, Norguard Insurance Company ("Guard"), endorsed to provide primary and non-contributing defense and indemnity coverage to the Huangs as additional insureds, and which insured K&K for its contractual indemnity obligations to the Huangs under the lease. Shortly after the lawsuit was filed, the Huangs tendered the Cao

Lawsuit to Guard and K&K for defense and indemnity and, after a two year delay, Guard agreed in writing that it owed the Huangs a defense and indemnity "without reservation" under the Guard policy.

Remarkably, however, despite that written representation, Guard refused to defend or indemnify the Huangs in the Cao Lawsuit as it agreed it would do under the policy. Instead, Guard insisted that the Huangs waive and relinquish their contractual indemnity rights against K&K as a condition to a defense being afforded and then refused to settle or otherwise tender the available insurance limits to the Huangs for settlement.

As a consequence of Guard's breach of its insuring obligations to the Huangs, the Huangs' excess commercial liability insurer and plaintiff herein, HDI Global Insurance Company ("HDI"), was compelled to drop down from its excess position and defend the Huangs in the Cao Lawsuit. Guard also refused to indemnify K&K for its contractual indemnity obligations to K&K under the lease, and assume that defense and indemnity obligation to the Huangs. HDI has repeatedly demanded that Guard settle the claims against the Huangs in the Cao Lawsuit, or otherwise tender Guard policy's limits of insurance coverage to HDI and the Huangs so that they may do so. Guard has refused. As a consequence of this further breach of its insuring obligations to the Huangs, Guard's direct duties to their excess insurer, HDI, and Guard's indemnity obligations to K&K for its assumed contractual liability to the Huangs, the Cao Lawsuit now cannot be settled, coverage under HDI's excess policy has been wrongly implicated, and the Huangs face a potential adverse judgment in excess of their available insurance coverage.

HDI, individually, and as the Huangs' equitable and legal subrogee, now brings this action against Guard pursuant to the codified and common laws of the United States of America

and the State of New York seeking, *inter alia*: (a) a declaration that Guard was and remains obligated to provide primary and non-contributing defense and indemnity coverage relative to the claims against the Huangs in the Cao Lawsuit; (b) a declaration that Guard is obligated to indemnify K&K for its assumed contractual indemnity obligations to the Huangs; (c) recovery of all sums HDI has advanced in connection with the defense of the Huangs in the Cao Lawsuit, together with interest on those sums; (d) a declaration that Guard has breached its fiduciary duties to the Huangs and HDI as a consequence of its abject refusal to defend and settle the claims against the Huangs in the Cao Lawsuit or otherwise tender the limits of the Guard policy so that HDI and the Huangs may do so; and (e) a declaration that, as a consequence of Guard's breaches and bad faith conduct, Guard is liable to pay any adverse judgment which may be entered against the Huangs in the Cao Lawsuit.

## THE PARTIES

1.      Plaintiff, HDI Global Insurance Company ("HDI"), is an Illinois corporation engaged in the insurance business with its principal place of business located at 161 North Clark Street, 48th Fl., Chicago, IL 60601.  HDI is duly authorized to do business in the State of New York and did, in fact, conduct such insurance business in the State of New York which is the subject of the claims for declaratory and other relief advanced herein.  HDI is a citizen of Illinois.

2.      HDI issued one of the insurance policies at issue in this case to Son Qun Huang and his wife, Ka Na Cao Huang (collectively, the "Huangs") and is the legal and equitable subrogee of certain rights and remedies available to the Huangs, as more fully described in this complaint.

3.     Defendant, NorGuard Insurance Company ("Guard"), is, upon information and belief, a wholly owned subsidiary of WestGUARD Insurance Company, which now operates under the trade name Berkshire Hathaway GUARD Insurance Companies.  Upon information and belief, Guard is a Nebraska corporation engaged in the insurance business with its principal place of business located at 39 Public Square, Wilkes Barre, PA 18703.  Guard is duly authorized to do business in the State of New York and did, in fact, conduct such insurance business in the State of New York which is the subject of the claims for declaratory and other relief advanced herein.  Guard is a citizen of Nebraska and Pennsylvania.

4.     Guard issued one of the insurance policies at issue in this case to New K & K Laundromat Inc.

5.     At all times relevant, Guard acted through its actual and ostensible agents, servants, workers, and employees, including but not limited to Clinton S. Hein, Esquire and the law firm Cascone & Kluepfel, LLP, and Tiffany Clouse, Senior Liability Claims Representative, Berkshire Hathaway GUARD Insurance Companies.

6.     Nominal defendant, New K & K Laundromat Inc. ("K&K"), is, upon information and belief, a New York corporation with its principal place of business at 5413 Avenue N, Brooklyn, New York 11234.  K&K is citizen of New York.

7.     At all times relevant, K&K was the tenant in possession of the Ground Floor Store (the "Leased Premises") in the building known as and located at 5413 Avenue N, Brooklyn, New York, pursuant to a certain April 16, 2018 lease agreement (the "Lease Agreement") with the Huangs.

8.      No claims are presently being advanced against K&K in this action; however, HDI and the Huangs reserve all rights against K&K under the terms of the Lease Agreement and at law.

9.      Nominal Defendant, Jie Cao, is, upon information and belief, a resident of the State of New York and is the plaintiff in an underlying lawsuit styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc*., Kings County Supreme Court Index No. 507925/2019 (the "Cao Lawsuit").  No claim or cause of action is asserted against Cao in this lawsuit.  He has been named as a nominal defendant solely as an interested party.

## II.  JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.     Venue is proper in the Eastern District of New York under 28 U.S.C. §1391 because, *inter alia*, a substantial part of the events or omissions giving rise to the claim, including the insurance and business transactions at issue in this case, took place within this District and pertain to an underlying lawsuit venued in this District, and because the defendant has minimum business contacts in this judicial district and throughout the State of New York sufficient to subject it to personal jurisdiction.

## FACTS COMMON TO ALL COUNTS

### A.      The Cao Lawsuit

12.     On April 9, 2019, Cao commenced a personal injury action by the filing of a verified complaint styled *Jie Cao v. Son Qun Huang, Ka Na Cao Huang, and K&K Laundromat*

*Inc.*, Kings County Supreme Court Index No. 507925/2019 (as noted *supra*, the "Cao Lawsuit"). A true and correct copy of the Complaint filed in the Cao Lawsuit is appended at **Exhibit "A"**.

13.     As alleged in the *Cao* Complaint, Cao sustained certain "serious injuries" when he fell from a ladder at the Leased Premises on December 12, 2018 (the "accident").  Cao Lawsuit Complaint ("Compl.") at ¶¶36-38.

14.     Cao alleges that prior to the accident, the Huangs leased the Leased Premises to K&K, who was the "tenant in possession" of those premises and operated, maintained, supervised, managed, and controlled those premises.  Compl. at ¶¶19, 20, 22-26.

15.     According to Cao, K&K "retained Li Yong Lin to perform renovation, repair and/or alteration work on the [Leased] [P]remises." Compl. at ¶21.

16.     Cao claims to have been an employee of Li Yong Lin.  Compl. at ¶27.

17.     While performing work at the Leased Premises for K&K, Cao claims he fell from a ladder and sustained "injuries" and "serious injuries."  Compl. at ¶¶36-38

18.     Cao advanced Labor Law 200, 240, and 241(6) claims against K&K and against the owner of the Leased Premises, the Huangs, and seeks damages "in an amount in excess of the jurisdictional limits of all lower courts in which this matter might otherwise have been brought, with interest from the date of the occurrence, together with the costs and disbursements of this action."  Compl. at ¶¶39, 45 and *ad damnum* clause.

19.     On July 31, 2024 the Supreme Court, Kings County dismissed Cao's Labor Law Section 200 claims, and the pleaded 241(6) claims against the Huangs (excepting under 12 NYCRR §23-1.21(b)(4)(iv)).

20.     On or about August 8, 2025, the Supreme Court, Kings County (a) entered summary judgment in the Cao Lawsuit favor of Cao and against K&K and the Huangs on the

7

remaining Labor Law Section 240(1) claim, (b) dismissed Cao's remaining Labor Law Section 241(6) claim, and (c) entered summary judgment in favor of the Huangs and against K&K on the Huangs' contractual defense and indemnity claims against K&K.

**B.      The Lease Agreement**

21.      At the time of the accident, K&K, as the tenant, and the Huangs, as the landlord, were parties to a certain April 16, 2018 lease agreement (the "Lease Agreement") respecting the Leased Premises where the accident occurred.  A true and correct copy of the Lease Agreement is appended hereto at **Exhibit "B"**.

22.      The Lease Agreement, among other things, obligated K&K to procure and maintain commercial general liability insurance, with limits of at least $1 Million, in favor of the Huangs as additional insureds on a primary and non-contributing basis:

**Article 41**
**Insurance**

41.02   Tenant covenants to provide on or before the earlier to occur of (i) the first Commencement Date, and (ii) ten (10) days from the date of this Lease, and to keep in force, at Tenant's own cost, during the term hereof the following insurance coverage which coverage shall be effective from and after such first Commencement Date:

(a)   A Commercial General Liability insurance policy naming Landlord and its designees as additional insureds protecting Landlord, its designees against any alleged liability, occasioned by any incident involving injury or death to any person or damage to property of any person or entity, on or about the Building, the Premises, common areas or areas around the Building or premises. Such insurance policy shall include Products and Completed Operations Liability and Contractual Liability covering the liability of Tenant to Landlord by virtue of the indemnification agreement in this Lease, covering bodily injury liability, property damage liability, personal injury & advertising liability and fire legal liability, all in connection with the use and occupancy of or the condition of the Premises, the Building or the related common areas, in amounts not less than:

$1,000,000, general aggregate per location;
$1,000,000, per occurrence for bodily injury & property damage
$1,000,000, personal & advertising injury
$500,000, fire legal liability

> Such insurance may be carried under a blanket policy covering the Premises and other locations of Tenant, if any, provided such a policy contains an endorsement (i) naming Landlord and its designees as additional insureds, (ii) specifically referencing the Premises; and (iii) guaranteeing a minimum limit available for the Premises equal to the limits of liability required under this Lease;

…

> 41.10 Each policy evidencing the insurance to be carried by Tenant under this Lease shall contain a clause that such policy and the coverage evidenced thereby shall be primary with respect to any policies carried by Landlord, and that any coverage carried by Landlord shall be excess insurance.

Lease Agreement at Art. 41.

23. The Lease Agreement also obligated K&K to "indemnify, defend and save Landlord harmless from and against any liability or expense arising from the use or occupation of the Premises by Tenant, or anyone on the Premises with Tenant's permission, or from any breach of this Lease." Lease Agreement at Art. 20.

24. The Lease Agreement expressly prohibited K&K from performing any repairs or improvements to the Leased Property without prior notice to and the consent of the Huangs. Lease Agreement at Art. 8, ¶8.01. The Lease Agreement further required K&K to ensure that any workers or contractors performing work at the Leased Premises maintained at least $1 Million in commercial general liability insurance naming the Huangs as additional insureds. *Id.* at Art. 8, ¶8.02 (vi).

25. K&K did not provide notice to, nor did it obtain the consent of the Huangs for the work performed by Li Yong Lin on December 12, 2018. See Ka Na Cao Huang Affidavit ("Huang Aff."), appended hereto at **Exhibit "C"**, at ¶8.

26. Neither Li Yong nor Cao maintained commercial general liability insurance for the work performed at the Leased Premises on December 12, 2018.

## C.     **The Guard Policy**

27.     K&K attempted to satisfy its insurance procurement requirements under the Lease Agreement by purchasing a commercial general liability policy from Guard (the "Guard Policy"), endorsed to include the Haungs as additional insureds on a primary and non-contributing basis.

28.     Despite repeated demands to Guard for a copy of the Guard Policy, Guard has refused to provide a copy of the Guard Policy to HDI or to its qualifying insureds, the Huangs, in breach of its duties to its insureds and their excess insurer, and in open defiance of CPLR §3101(f).

29.     Upon information and belief, the Guard Policy has third party liability limits of at least $1 Million per occurrence, and was in effect on December 12, 2018.

30.     Upon information and belief, the Guard Policy includes a Coverage A (Bodily Injury and Property Damage Liability) insuring grant that obligates Guard to pay those sums a qualifying "insured" may become legally obligated to pay as damages because of "bodily injury" caused by an "occurrence" where that "bodily injury" occurs during the effective dates of the policy, and to defend the "insured" against "suits" alleging such damages.

31.     Upon information and belief, the definition of "insured", for purposes of the Guard Policy's Coverage A insuring agreement, is amended by endorsement to include the Huangs, with respect to *inter alia*, bodily injury claims arising out of accidents which occur within the Leased Premises and/or K&K's use or occupancy of the Leased Premises.

32.     Upon information and belief, the Guard Policy expressly stipulates that the coverage afforded the Huangs as additional insureds is primary and non-contributing with any other insurance available to them where required by contract.

33. The Guard Policy affords coverage to K&K for the contractual indemnity judgment entered against K&K under the lease agreement.

**D.**      **Excess Insurance Available to the Huangs**

34. The Huangs, at relevant times, purchased commercial general liability insurance from HDI designed to provide excess liability coverage over the insurance available to the Huangs under the Guard Policy for liability claims advanced against them arising out of the Leased Premises, such as the accident involving Cao. See Huang Aff. at ¶¶9, 10.

35. To that end, the Huangs purchased HDI Global Insurance Company Policy No. GK15X004537-00, effective September 12, 2018 to September 12, 2019, with indemnity limits of $1 Million per occurrence (the "HDI XS Policy") which applies excess of the non-eroding indemnity limits of the Guard Policy. A true and correct copy of the HDI XS Policy is appended hereto at **Exhibit "D"**.

36. The HDI Policy's excess indemnity obligation relative to the claims advanced against the Huang Defendants in the Cao Lawsuit does not attach until the full limit of the primary Guard Policy is properly exhausted by reason of the payment of a judgment or settlement.

37. HDI has no "duty to defend" under the HDI XS Policy, where, as here, the Guard Policy provides the Huangs with primary and noncontributing coverage, inclusive of defense and indemnity.

38. However, the HDI Policy expressly affords HDI the right to drop down from its excess position and defend where, as here, its policyholders are afforded additional insured coverage and the primary insurer on the risk (i.e., Guard) fails to defend. Under those

circumstances, HDI is legally subrogated to the insured's rights to recover the defense costs it advances from that primary insurer (i.e., Guard):

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. Excess Insurance

(1) This insurance is excess over:
…
(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

HDI Policy at Commercial General Liability Coverage Form (CG 0001 (4/13)), Section IV. ¶4.

## CASE AND CONTROVERSY

A.    **Guard's Wrongful Refusal**
      **To Defend the Huangs in the Cao Lawsuit**

39.    The Huangs tendered their defense and advanced a demand for indemnity in the Cao Lawsuit to K&K and its insurer, Guard, on December 22, 2019. A true and correct copy of the December 22, 2019 tender is appended hereto at **Exhibit "E"**.

40.    Guard did not respond to the December 22, 2019 tender until February 8, 2022.

41.    On February 8, 2022 Guard belatedly advised in writing:

> Please be advised that we are in receipt of your attached tender for your clients, Son Qun Huang and Kana Cao Huang. After careful review, NorGUARD Insurance is accepting the tender of defense and indemnity of Son Qun Huang and Kana Cao Huang, ***without reservation***, pursuant your request.

(Emphasis in original).  A true and correct copy of Guard's February 8, 2022 acceptance of the tender without reservation is appended hereto as **Exhibit "F"**.

42.     Guard noted at the time that it intended to "transfer" the defense of the Huangs to counsel Guard had appointed to defend K&K in the Cao Lawsuit.  *Ibid.*

43.     Guard's purported attempt to condition its primary obligation to defend the Huangs—by consolidating the defense with counsel appointed to defend K&K—amounted to a demand that the Huangs forego their right to independent conflict-free counsel under the Guard Policy and, further, abandon their contractual and common law indemnity rights and claims against K&K in the Cao Lawsuit.

44.     By conditioning the Huangs' defense in this regard, Guard placed its own financial interests over those of the Huangs by attempting to save defense costs and to avoid additional indemnity exposure under the Guard Policy.

45.     More specifically, by attempting to force the Huangs to accept a defense by fatally conflicted counsel for K&K, Guard sought to: (1) avoid additional costs associated with its contractual obligation to provide independent (conflict free) defense counsel for the Huangs, and (2) effectively extinguish the Huangs' covered common law and contractual indemnity claims against K&K.

46.     Guard's effort to condition its defense obligation by foisting conflicted counsel upon the Huangs and insisting they abandon their contractual and common law rights and claims against K&K is untethered to any rational view of the law or the terms of the Guard Policy and

constitutes a knowing and purposeful breach of the Guard's duty to defend under the Guard Policy.

47.     Guard in fact abandoned its insureds by refusing to defend them with conflict-free counsel and insisting that they forego their contractual indemnity rights against the Guard policyholder.

48.     Faced with Guard's abject refusal to discharge its admitted defense obligation to the Huangs, HDI, as the Huangs' excess insurer, was compelled to drop down from its excess attachment point and provide a defense to the Huangs through independent counsel in the Cao Lawsuit.

49.     HDI continues to advance defense costs on behalf of the Huangs in the Cao Lawsuit to this date.

50.     HDI has repeatedly demanded that Guard reimburse the reasonable and appropriate defense costs it has advanced to defend the Huangs in the Cao Lawsuit, but Guard has ignored those requests and refused to do so.

51.     Guard has never paid any defense costs for the Huangs in the Cao Lawsuit, despite expressly agreeing to defend and indemnify the Haungs "without reservation".

52.     The defense costs incurred on behalf of the Huangs in the Cao Lawsuit exceed $175,000 plus accrued pre-judgment interest at 9% per annum on the liquidated amounts, each annual period running from December 22, 2019 to the present.

**B.     Guard's Refusal to Settle Cao's Claims Against The Huangs Within The Guard Policy's Limits**

53.     Guard was on actual notice of the claims against its policyholder, K&K, and its additional insureds, the Huangs, shortly after the filing of the Cao Lawsuit on April 9, 2019.

54. Had Guard acted promptly and in accordance with its recognized duties at law and under the Guard Policy to the Huangs and HDI, the claims against the Huangs, upon information and belief, could have been settled with the limits of the Guard Policy.

55. However, Guard made no attempt to resolve the claims against the Huangs— before or after belatedly acknowledging in writing that it would indemnify the Huangs in the Cao Lawsuit "without reservation."

56. Guard's refusal to timely settle the claims against the Huangs in the Cao Lawsuit within the Guard Policy's limits exposed HDI's excess policy to a potential indemnity obligation excess of the Guard Policy's limits, and has exposed the Huangs to a potential adverse judgment in excess of their available insurance under the Guard Policy and the HDI XS Policy.

**C.** **Guard's Refusal to Mediate Cao's Claims Against The Huangs Or Tender the Guard Policy's Limits For Settlement**

57. Having squandered any opportunity to potentially resolve the claims against the Huangs within the Guard Policy's limits, by refusing to entertain settlement negotiations or make any offers on their behalf, Cao predictably made a demand which encompassed both the Guard Policy's limits and the HDI XS Policy's limits (i.e., a total "global" demand of $2 Million). See August 24, 2022 Demand Letter, appended hereto as **Exhibit "G"**.

58. Guard wholly ignored the settlement demand, refused to make any offers on behalf of the Huangs (or its policyholder, K&K), and refused to tender the Guard Policy's limits to the Huangs' excess insurer, HDI, so that HDI could engage in settlement negotiations.

59. By 2024, Guard's retained defense counsel for K&K in the Cao Lawsuit reported that he had recommended to Guard that it make the Guard Policy's limit available to the Huangs and HDI to settle the Cao Lawsuit, commenting that if Guard followed his recommendation, he

would "hand the reins over to" the Huangs' defense counsel "to handle any discussions with plaintiff's counsel as to global settlement."

60.     Instead of following its own appointed counsel's recommendation to tender the Guard Policy's limit for settlement, Guard replaced him, and made no offers or tenders.

61.     With a trial date certain in the Cao Lawsuit approaching, a mediation of the Cao Lawsuit was then scheduled for March 13, 2025.

62.     Guard continued its abject and groundless refusal to entertain settlement negotiations despite the potential liability its insureds (including the Huangs) faced if the case proceeded to trial.

63.     Prior to the mediation, HDI made demands that Guard immediately settle and resolve the claims against the Huangs in the Cao Lawsuit within the primary limits of the Guard Policy or, if no longer possible, make those limits available to the Huangs and their excess insurer, HDI, at the mediation.  See March 12, 2025 correspondence to Guard, appended hereto at **Exhibit "H"** and incorporated herein by reference.

64.     Among other things, HDI made clear to Guard that should it fail or otherwise be unable to resolve the claims against the Huangs within the $1 Million available primary limit of the Guard Policy, HDI reserved the right to hold Guard responsible for any adverse judgment or settlement of the claims against the Huangs in the Cao Lawsuit, inclusive of, but not limited to, any amounts HDI may be called upon to pay to resolve an excess judgment or effectuate a settlement under the HDI XS Policy.  *Id*.

65.     HDI further confirmed:

> Despite acknowledging these insuring obligations, it remains HDI's understanding that over the course of nearly six (6) years of litigation, Guard has inexplicably failed to take advantage of any opportunities to settle the claims against the Huang Defendants.  In fact, to our knowledge, Guard has failed to make any offer to settle on behalf of the Huang Defendants, nor has it kept the Huang Defendants and HDI apprised of any efforts it may

16

have undertaken to resolve those claims despite Guard's good faith duties to both the Huang Defendants and HDI to do so.  Further, to date, Guard has failed to indemnify the post-tender defense costs incurred on behalf of the Huang Defendants, in material breach of its contractual defense obligations.  The latter material breach of its insuring agreement has compelled HDI to drop down from its excess position and fund the defense of the Huang Defendants in the Cao Lawsuit.

*Id.*

66.     HDI's pre-mediation demands were summarized as follows:

**To be clear and so there is no possible misunderstanding, HDI demands that Guard settle the claims against the Huang Defendants within the available primary limits of the Guard Policy.  If such a settlement is no longer achievable, then Guard must tender the primary limit to HDI so that HDI is in a position to attempt to resolve the claims against the Huang Defendants**.  Should Guard fail to resolve the case within its primary coverage, or otherwise fail to make that limit available to the Huang Defendants and their excess insurer for settlement, Guard will be responsible for any adverse judgment in this matter against the Haung Defendants, regardless of the amount.

**To be equally clear, HDI fully reserves its rights to recover any sums it may be called upon to advance to settle the claims against the Huang Defendants, as well as its subrogated rights to recover all post-tender defense costs from Guard, plus interest, and all other consequential damages arising out of Guard's breach of its insuring agreement and the duties owed to the Huang Defendants and HDI**.

*Id.* (emphasis in original).

67.     Guard wholly ignored these demands and did not respond or otherwise challenge any aspect of the historical facts and points of law addressed in HDI's March 13, 2025 correspondence, thus admitting the same without exception.

68.     Guard made no pre-mediation offers, and refused to consider tendering the Guard Policy's limit to HDI for purposes of settlement.

69.     The Cao Lawsuit proceeded to mediation as scheduled, at which time Guard affirmatively elected to stonewall the mediation process and any prospect of a settlement by refusing to make any material offer to settle the case under its acknowledged primary Guard Policy, in breach of its direct fiduciary duties to the Huangs and their excess insurer, HDI.

70.     More specifically, at the referenced mediation, after Guard acknowledged (as it had expressly done in the past) that the Guard Policy affords $1 Million in indemnity limits, on a primary and non-contributing basis, for the Huangs relative to the claims asserted against them in the Cao Lawsuit, and being informed by the mediator of a "negotiable" $2 Million demand to settle, Guard refused to make any substantive offer to settle the case.

71.     Instead, Guard chose to make a nominal offer which did not even approximate the current amount of the worker's compensation lien in the matter. This was met with resistance from the mediator and HDI, and infuriated counsel for Mr. Cao, bringing a swift end to any prospect of a settlement at the mediation.

72.     Amazingly, Guard, which has been adjusting the defense of its policyholder, K&K, for the past six (6) years, and had expressly assumed the obligation to defend the Huangs, but failed to do so for the same six (6) years, claimed that it was "unprepared" to engage in any settlement negotiations beyond the nominal offer made. This representation, characterized as an "excuse" for its utter failure to engage in any good faith settlement negotiations at mediation, was knowingly and demonstrably false.

73.     To begin, Guard's appointed defense counsel assigned to defend K&K in the Cao Lawsuit had acknowledged, in writing, more than one (1) year prior, that the exposure presented by the Cao Lawsuit exceeded the Guard Policy's limit, and that this had been reported, directly, to Guard. That counsel suggested at that time, in writing, that Guard "hand over the reins" to the excess insurer (HDI) to negotiate a "global settlement" of the Cao Lawsuit. Guard plainly ignored advice of counsel and then had the temerity to misrepresent more than a year later, that it was unable to appropriately "value" the case for purposes of settlement due to a "lack of information".

74.     Guard advanced this charade further by claiming that the plaintiff's counsel in the Cao Lawsuit had failed to supply pertinent information necessary for the settlement evaluation, notwithstanding prior counsel's reported evaluation more than one year prior that the settlement value of the case exceeded the Guard Policy's $1 Million indemnity limit. As part of this false pretense advanced to deflect from Guard's bad faith handling of its settlement obligations over the past six (6) years, Guard claimed that it was "missing" several documents which, in fact, had been previously produced by the plaintiff or otherwise do not even exist.

75.     By way of example, Guard claimed at mediation that it was "unaware" of the worker's compensation lien information, despite the plaintiff's counsel having expressly updated that information, providing the then current lien amount of $212,000, prior to the mediation.

76.     Likewise, Guard claimed it lacked damage disclosures, which had previously been produced in the litigation.

77.     Either these representations were false when made, or Guard has conceded that it made no effort whatsoever to evaluate the claim prior to engaging in the mediation.

78.     Perhaps even more remarkable, Guard eschewed its defense obligations to both its policyholder and the Huangs by failing to pay for a vocational assessment of the plaintiff such that the expert's report could be released for the defendants' use—and then attempted to use that failure as a further fabricated excuse for not making any credible offer at the mediation.

79.     Guard's deliberate pattern of behavior evinced a conscious and knowing indifference to its insureds' and their excess insurer's rights, and their insureds' exposure to a potentially large and underinsured judgment.

80. Beyond engaging in this documented and actionable misconduct, it is self-evident that Guard made a calculated decision to gamble with its insureds' personal assets and their excess insurer's funds placing those risks subordinate to Guard's own financial self-interests.

81. During the mediation, Guard expressed its "goal" in "saving something" off of its policy limits. To further that self-dealing, it advanced a contemptible proposition that the Huangs' excess insurer should "partner" with Guard to resolve the case. Putting aside that Guard insures all of the defendants in the Cao Lawsuit (including K&K), and that HDI only insures the Huangs on an excess basis, Guard knew there was no plausible support for that proposition under the terms of the Guard Policy or any legal authority, anywhere.

82. Guard deliberately sabotaged and precluded a settlement of the Cao Lawsuit at mediation by conditioning any meaningful offer under its primary policy upon an excess insurer dropping down from its attachment point and paying monies properly due and owing under the primary policy.

83. Guard was of the mistaken belief that it can avoid an extra-contractual exposure to its insureds and HDI by hiding behind a demand in excess of its limits, whilst positioning itself to "save money" out of its own pocket by refusing to engage in any good faith settlement negotiations until an excess insurer contributes monies within Guard's primary layer of coverage.

84. Guard is dead wrong.

85. First, Guard had every opportunity to settle this matter for years prior to the mediation, and made no effort whatsoever to do so. Its failure to engage in any settlement negotiations (or even make an offer), despite the admission by its own appointed counsel that the matter presents an exposure in excess of the Guard Policy's limit, had already given rise to

certain extra-contractual liability for any settlement or adverse judgment against the Huangs regardless of the amount.

86.     Second, given Guard's failure to settle the case previously, the Cao Lawsuit could not then be settled for less than $1 Million—as was made clear to everyone at the mediation by the mediator, thereby confirming Guard's extra-contractual liability.

87.     The mediator, however, also made clear that the case could be settled in a range within the excess insurer's limit, once Guard tendered its primary limit.  This was abundantly clear to all participants at the mediation.

88.     <u>HDI accordingly was prepared to settle the case within the limits of its excess policy at the mediation once the Guard Policy's primary limit was tendered, and made that intent clear to everyone participating in the mediation, including Guard</u>.

89.     By maintaining what amounted to a "no pay" position at the mediation, rejecting HDI's prior demand for a tender, and ignoring mediator's insistence that the same was a necessary condition precedent to settle the case, Guard knowingly and deliberately precluded that settlement in bad faith.

90.     Given that conduct, Guard further sealed its extra-contractual exposure to HDI for any sums HDI may now be called upon to pay to secure a settlement of the claims against the Huangs over the amount that the case would have been settled for at the mediation.

91.     As a matter of prevailing law, in the event HDI is now unable to settle the claims for the amount it was prepared to pay at mediation, Guard is responsible for any settlement or adverse judgment against the Huangs in this case, regardless of the amount.  <u>See e.g.</u>, *Scottsdale Ins. Co. v. Indian Harbor Ins. Co.*, 994 F. Supp. 2d 438, 450  (S.D.N.Y. 2014).[1]

---

[1] *Scottsdale* is particularly apposite here.  The *Scottsdale* court permitted an excess bad faith claim to move forward involving the settlement of a construction accident loss for $2.5 million, where the excess

92.     To be clear, Guard not only refused to settle the case, but it refused to tender its limit to HDI so that HDI could settle the case, effectively—and deliberately—foreclosing the opportunity for a pre-verdict settlement of its insureds' liability.

93.     Guard is, accordingly, responsible for any excess settlement or judgment which exceeds the amount that the Cao plaintiff was willing to accept during the course of the litigation or, most recently, at the mediation.

94.     Following the Guard-inspired failed mediation, HDI confirmed the foregoing facts, false representations, and events at the mediation outside of any mediation privilege, and once again demanded that Guard immediately settle the case or tender the full limit of the Guard Policy, so that HDI would be able and in a position to potentially resolve this claim.  See March 17, 2025 Correspondence to Guard, appended hereto at **Exhibit "I"** and incorporated herein by reference.

95.     Guard wholly ignored these demands and did not substantively respond or otherwise specifically challenge the historical facts, its false misrepresentations, and points of

---

insurer, Scottsdale, paid $1.5 million.  The matter had been mediated, and the primary insurer (Indian Harbor) only offered $200,000 at the mediation, which the Court described as an "absurd amount".  The tort case settled on the eve of jury selection.  The primary insurer sought to dismiss the bad faith claim arguing the absence of an instruction from the excess insurer to settle within limits precluded a finding of bad faith, but this position was rejected, with the court holding that an excess insurer does not have a duty to supervise the actions of a primary insurer, adding the primary insurer "has a duty to handle the case in good faith, a duty which may be influenced by the primary insurer's communications with the excess insurer."  994 F. Supp. at 459-460.  Hence, the Court found:

> ... A jury could instead find that Indian Harbor never budged from an offer of $200,000, which became increasingly absurd, particularly once its attorneys had determined, as early as February 18, 2011, that the case should be settled for $950,000.

*Id.*  Here, the attorney appointed by Guard had evaluated this case as presenting an exposure in excess of the Guard Policy limit in 2024.  Guard's token offer at the mediation on March 13, 2025 would be seen by any reviewing court in the same manner as the $200,000 offer made by the primary insurer in *Scottsdale*; in a telling word, "absurd".

law addressed by HDI's March 17, 2025 correspondence, thus admitting the same without exception.

96.     Based on the Guard's representation at the March 13, 2025 mediation that it was "unprepared" to engage in any meaningful settlement negotiations, the mediator agreed to set aside April 17, 2025 for a further mediation.

97.     Rather than preparing for a second day of mediation, Guard—in a text book example of bad faith—once again stonewalled any effort to resolve the case.

98.     In its latest ploy to elevate its own financial interests over those to whom it owes a fiduciary duty, Guard postponed further mediation of the claims in the Cao Lawsuit in April, 2025 under the guise that it was still "evaluating" this six-year old lawsuit.[2]

99.     Despite the mediator holding an April date for a continued mediation effort, Guard represented to its insureds "[t]o be most constructive, we will need the May date for continued mediation as April 17th will likely be too soon to review the issues with senior management."

100.     This statement flies in the face of Guard's own appointed counsel's recognition and reporting—over a year prior—that the claim presented a limits exposure to Guard such that Guard's limit should be tendered to HDI for resolution.  What, exactly, prevented "senior management" at Guard from evaluating the case in light of counsel's evaluation then, or any time during the past six years, was left unanswered.

---

[2] The Verrazzano-Narrows Bridge, an exceptionally complex engineering feat, was built in less time than it has supposedly taken Guard to "evaluate" this basic labor law claim involving a garden variety alleged fall from a ladder. See Construction of the Verrazzano-Narrows Bridge, a long-span suspension bridge spanning New York Harbor from Brooklyn to Staten Island, commenced on August 14, 1959 and was opened on November 21, 1964. https://www.britannica.com/topic/Verrazano-Narrows-Bridge.

101.    Guard's delaying the resumption of mediation by contending it still remains "unprepared" to adjust this claim was another fabricated "excuse" for its utter failure to engage in any good faith settlement negotiations.

102.    HDI again demanded that Guard immediately settle the case or tender the full limit of the Guard Policy, so that HDI would be able and in a position to potentially resolve this claim.  See April 16, 2025 Correspondence to Guard, appended hereto at **Exhibit "J"** and incorporated herein by reference.

103.    Guard again refused to respond, engage in settlement negotiations on behalf of its insureds, or make the Guard Policy's limit available for settlement.

104.    After suggesting that a "mediation date in May" would afford ample opportunity for Guard to—by its own representation—evaluate the six-year old claim for the *first time*, a date was set for the continued mediation on July 9, 2025, the first available date for the mediator.

105.    On the eve of that rescheduled mediation, Guard unilaterally cancelled the same advising that it would not make any offers on behalf of its insureds to settle the claims in the Cao Lawsuit nor would it tender the Guard Policy's limits to the Huangs' excess insurer for settlement.

106.    By once again refusing to engage in any settlement discussions or otherwise making the Guard Policy's limits available to the excess insurer for settlement purposes, Guard breached its direct duties to the Huangs and their excess insurer, HDI, in gross disregard of their interests under prevailing law.

107.    Guard's conduct throughout the underlying litigation epitomizes a conscious and knowing indifference to its insureds' and their excess insurer's rights, and their insureds' exposure to a potentially large and underinsured judgment.

108.    As a consequence of Guard's breach of its fiduciary and related duties to the Huangs and HDI, the Huangs now face a potential adverse judgment in the Cao Lawsuit in excess of the limits of the Guard Policy's liability insurance and possibly, the HDI XS Policy's limit.

**D.    Guard's Refusal to Indemnify K&K for
Contractual Indemnity Obligations to the Huangs**

109.    On or about August 8, 2025, the Supreme Court, Kings County entered summary judgment in favor of the Huangs and against K&K on the Huangs' contractual defense and indemnity claims against K&K.

110.    Consequently, K&K owes a full defense and indemnity to the Huangs for the claims in the Cao Lawsuit, and has been obligated to provide a defense to and indemnify the Huangs ever since the Huangs tendered their defense and advanced a demand for indemnity in the Cao Lawsuit to K&K and its insurer, Guard, on December 22, 2019. See December 22, 2019 tender is appended hereto at **Exhibit "E"**.

111.    Guard, at all times, insured K&K for the contractual defense and indemnity obligations in favor of the Huangs under the Lease Agreement.

112.    In breach of its insuring obligations under the Guard Policy, Guard has refused to indemnify K&K for its contractual defense and indemnity obligations in favor of the Huangs under the Lease Agreement, or otherwise assume the defense and indemnity of K&K's contractual indemnitees, the Huangs.

**COUNT I
DECLARATORY RELIEF AGAINST GUARD
(Duty to Indemnify Defense Costs)**

113.    Plaintiff incorporates by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

114.     The Guard Policy provides primary commercial general liability insurance coverage which obligates Guard to defend any qualifying "insured" against a claim for "bodily injury" caused by an "occurrence" which takes place during the policy period.

115.     The Guard Policy defines an "insured" so as to include the Huangs by endorsement.

116.     The additional insured coverage afforded by the Guard Policy extends liability coverage to the Huangs for "bodily injury" as alleged in the Cao Lawsuit on a primary and non-contributing basis.

117.     Guard expressly admitted it owes a duty to defend the Huangs on a primary and non-contributing basis for the claims advanced in the Cao Lawsuit under the Guard Policy, and did so "without reservation".

118.     Guard has never advanced any reservation of rights relative to its defense or indemnity obligations in favor of the Huangs or any plausible coverage defense to its duty to defend or indemnify them in the Cao Lawsuit.

119.     Guard's duty to defend the Huangs under the Guard Policy is not contingent upon the Huangs abandoning their contractual and common law indemnity rights against K&K.

120.     Guard's duty to defend the Huangs under the Guard Policy is not contingent upon the Huangs accepting conflicted counsel appointed by Guard.

121.     Guard has waived any right to contest its duty to defend the Huangs in the Cao Lawsuit by knowingly and voluntarily admitting that the Guard Policy affords a defense to the Huangs in the Cao Lawsuit on a primary and non-contributing basis.

122.     All conditions precedent for the trigger of a primary defense obligation in favor of Huangs under the Guard Policy have been satisfied or otherwise waived by Guard.

123.     Guard is precluded by law from raising any coverage defenses to its duty to defend and indemnify the Huangs in the Cao Lawsuit.

124.     The Huangs timely tendered their defense of the claims advanced in the Cao Lawsuit to Guard on December 22, 2019.

125.     Despite acknowledging, in writing, a primary and non-contributing duty to defend the Huangs in the Cao Lawsuit without reservation, Guard refused to defend the Huangs in that lawsuit with conflict-free counsel and instead demanded that the defense it would afford was contingent upon the Huangs surrendering their common law and contractual indemnity rights and remedies against K&K.

126.     As a direct and foreseeable consequence of Guard's breach of its duty to defend, the Huangs' excess insurer, HDI, dropped down from its excess position over the Guard Policy and defended the Huangs in the Cao Lawsuit at great cost and expense, consistent with the terms of the HDI XS Policy and subject to HDI's reserved rights to recover all defense costs it advanced from Guard, with interest.

127.     Guard has failed and refused to defend the Huangs with non-conflicted counsel in the Cao Lawsuit, or otherwise indemnify HDI for the defense costs it has incurred on their behalf in the Cao Lawsuit.

128.     There exists a substantial, *bona fide*, actual and justiciable dispute regarding Guard's duty to defend and indemnify defense costs HDI has incurred, and continues to incur, on behalf of the Huangs in the Cao Lawsuit under the Guard Policy.

129.     This Court has the power to declare rights, status and other legal relations under a contract either before or after a breach thereof, and whether or not further relief is or could be claimed.  28 USCS §2201 *et seq*.

**WHEREFORE**, plaintiff, HDI Global Insurance Company, respectfully requests that this Honorable Court enter:

(a) An Order declaring that NorGuard Insurance Company was and is obligated to defend Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019 on a primary and non-contributing basis under the NorGuard Insurance Company commercial liability policy issued to New K & K Laundromat Inc. and in effect on December 12, 2018;

(b) An Order declaring that the coverage afforded Son Qun Huang and Ka Na Cao Huang under HDI Global Insurance Company Policy No. GK15X004537-00 is excess to and non-contributing with the primary commercial general liability insurance coverage afforded to Son Qun Huang and Ka Na Cao Huang as additional insureds under the NorGuard Insurance Company commercial liability policy issued to New K & K Laundromat Inc. and in effect on December 12, 2018 as regards to all defense costs and expenses incurred by or on behalf of Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019;

(c) Judgment in favor of HDI Global Insurance Company and against NorGuard Insurance Company for all attorney's fees and costs incurred in this civil action to the fullest extent permitted under applicable law or Rule of Court; and

(d) An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

**COUNT II**
**BREACH OF CONTRACT AND CIVIL DAMAGES**
**AGAINST GUARD**
**(Defense Costs)**

130.    Plaintiff incorporates by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

131.    The Guard Policy provides primary commercial general liability insurance coverage which obligates Guard to defend any qualifying "insured" against a claim for "bodily injury" caused by an "occurrence" which takes place during the policy period.

132.    The Guard Policy defines an "insured" so as to include the Huangs by endorsement.

133. The additional insured coverage afforded by the Guard Policy extends liability coverage to Huangs for "bodily injury" as alleged in the Cao Lawsuit on a primary and non-contributing basis.

134. Guard has expressly admitted it owes a duty to defend and indemnify the Huangs on a primary and non-contributing basis for the claims advanced in the Cao Lawsuit under the Guard Policy, and did so "without reservation".

135. Guard has never advanced any reservation of rights relative to its defense or indemnity obligations in favor of the Huangs or any plausible coverage defense to its duty to defend or indemnify them in the Cao Lawsuit.

136. Guard's duty to defend the Huangs is not contingent upon the Huangs abandoning their contractual and common law indemnity rights against K&K.

137. Guard's duty to defend the Huangs is not contingent upon the Huangs accepting conflicted counsel appointed by Guard.

138. Guard has waived any right to contest its duty to defend the Huangs in the Cao Lawsuit by knowingly and voluntarily admitting that the Guard Policy affords a defense and indemnity to the Huangs in the Cao Lawsuit on a primary and non-contributing basis.

139. Guard is precluded as a matter of law from raising any coverage defenses to its duty to defend and indemnify the Huangs in the Cao Lawsuit.

140. All conditions precedent for the trigger of a primary defense obligation in favor of Huangs under the Guard Policy have been satisfied or otherwise waived by Guard.

141. The Huangs timely tendered their defense of the claims advanced in the Cao Lawsuit to Guard on December 22, 2019.

142. Despite acknowledging, in writing, a primary and non-contributing duty to defend the Huangs in the Cao Lawsuit without reservation, Guard refused to defend the Huangs in that lawsuit with conflict-free counsel and instead demanded that the defense it would afford was contingent upon the Huangs surrendering their common law and contractual indemnity rights and remedies against K&K.

143. As a direct and foreseeable consequence of Guard's breach of its duty to defend, the Huangs' excess insurer, HDI, dropped down from its excess position over the Guard Policy and defended the Huangs in the Cao Lawsuit at great cost and expense, consistent with the terms of the HDI XS Policy and subject to HDI's reserved rights to recover all defense costs it advanced from Guard, plus interest on those sums.

144. Guard has failed and refused to defend the Huangs with non-conflicted counsel in the Cao Lawsuit, or otherwise indemnify HDI for the defense costs it has incurred on their behalf in the Cao Lawsuit.

145. Guard has breached the material terms of their insuring agreement by failing to defend the Huangs or indemnify defense costs incurred by HDI in the Cao Lawsuit.

146. The breach of contract by Guard is material and without justification.

147. As a direct and foreseeable consequence of Guard's material breach, HDI has been compelled to pay all defense costs and expenses incurred by and on behalf of the Huangs in the Cao Lawsuit.

148. As a direct and foreseeable consequence of Guard's material breach, HDI has incurred other consequential and foreseeable damages, including but not limited to the costs of bringing this action to compel Guard to fulfill its contractual obligations under the Guard Policy.

149. Guard waived any right to contest its duty to defend the Huangs in the Cao Lawsuit by knowingly and voluntarily admitting that the Guard Policy affords a defense to the Huangs in the Cao Lawsuit on a primary and non-contributing basis.

150. All conditions precedent for the trigger of a primary defense obligation in favor of the Huangs under the Guard Policy have otherwise been satisfied or waived by Guard.

151. Guard is precluded as a matter of law from raising any coverage defense relative to its duty to defend and indemnify the Huangs in the Cao Lawsuit.

152. Guard is obligated to reimburse HDI for all defense costs and expenses incurred on behalf of the Huangs in the Cao Lawsuit.

153. Guard is obligated to pay all other consequential damages sustained by HDI as result of Guard's breach of contract.

**WHEREFORE**, plaintiff, HDI Global Insurance Company, respectfully requests that this Honorable Court enter:

(a) An Order declaring that NorGuard Insurance Company was and is obligated to indemnify all defense costs incurred on behalf of Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019 on a primary and non-contributing basis under the NorGuard Insurance Company commercial liability policy issued to New K & K Laundromat Inc. and in effect on December 12, 2018;

(b) An Order declaring that NorGuard Insurance Company materially breached its defense obligations in favor of Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019 under the NorGuard Insurance Company commercial liability policy issued to New K & K Laundromat Inc. and in effect on December 12, 2018;

(c) Judgment against NorGuard Insurance Company and in favor of HDI Global Insurance Company for all costs and expenses incurred on behalf of Son Qun Huang and Ka Na Cao Huang in their defense of the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019, plus interest on those sums;

(d)     Judgment against NorGuard Insurance Company and in favor of HDI Global Insurance Company for all consequential damages sustained by HDI Global Insurance Company as a result of NorGuard Insurance Company's breach of its contractual obligations under the NorGuard Insurance Company commercial liability policy issued to New K & K Laundromat Inc. and in effect on December 12, 2018, plus interest on those sums;

(e)     Judgment in favor of HDI Global Insurance Company and against NorGuard Insurance Company for all attorney's fees and costs incurred in this civil action to the fullest extent permitted by applicable law or Rule of Court; and

(f)     An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

## COUNT III
## DECLARATORY RELIEF AGAINST GUARD
## ABANDONMENT
**(Duty to Indemnify Any Adverse Judgment or Settlement In the Cao Lawsuit)**

154.    Plaintiff incorporates by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

155.    The Guard Policy provides primary and non-contributing commercial general liability insurance coverage which obligates Guard to indemnify sums any qualifying "insured" is legally obligated to pay as damages because of "bodily injury" caused by an "occurrence" which takes place during the policy period.

156.    The Guard Policy defines an "insured" by endorsement so as to include the Huangs for liabilities arising out, *inter alia*, K&K's use and occupancy of the Leased Premises, and for losses which occur within the Leased Premises.

157.    The Guard Policy provides primary and non-contributing indemnity coverage to the Huangs for all claims advanced against the Huangs in the Cao Lawsuit.

158.    Guard has expressly admitted that Guard Policy provides primary and non-contributing indemnity coverage to the Huangs for all claims advanced against the Huangs in the Cao Lawsuit, and did so without reservation of rights.

159.    Guard is precluded as a matter of law from contesting or raising any coverage defense to its confirmed duty to indemnify the Huangs in the Cao Lawsuit.

160.    Guard abandoned its insureds by refusing to defend them with conflict-free counsel and insisting that they forego their contractual and common law indemnity rights against the Guard policyholders in bad faith.

161.    An insurer which denies coverage does so at its own peril. *Colony Ins. Co. v. Merchs. Preferred Ins. Co.,* No. 1:19-cv-4409 (ENV) (SJB), 2021 U.S. Dist. LEXIS 269395 (E.D.N.Y. June 20, 2021).

162.    As a consequence of that bad faith conduct, Guard is now liable as a matter of law to indemnify the Huangs and their excess insurer, HDI, for any reasonable, non-collusive settlement they may reach to resolve their exposure in the Cao Lawsuit.

163.    As a further consequence of that bad faith conduct, Guard is now liable as a matter of law to indemnify any adverse judgment against the Huangs in the Cao Lawsuit.

164.    While there is no substantial or *bona fide* dispute concerning Guard's abandonment of its insureds or the legal consequences of Guard's express admission, without reservation, of its duty to indemnify the Huangs in the Cao Lawsuit, an actual and justiciable controversy exists regarding Guard's duty to pay any settlement or adverse verdict in the Cao Lawsuit by virtue of its bad faith breach of the covenants of good faith and fair dealing under the Guard Policy.

165.    This Court has the power to declare rights, status and other legal relations under a contract either before or after a breach thereof, and whether or not further relief is or could be claimed.  28 USCS §2201 *et seq*.

**WHEREFORE**, plaintiffs HDI Global Insurance Company respectfully requests that this Honorable Court enter:

(a) An Order declaring that NorGuard Insurance Company is obligated to indemnify any reasonable settlement of the claims against Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019;

(b) An Order declaring that NorGuard Insurance Company is obligated to indemnify any adverse judgment against Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019;

(c) Judgment against NorGuard Insurance Company and in favor of HDI Global Insurance Company for any sums HDI Global Insurance Company may advance to settle or satisfy, in whole or in part, any judgment against Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019, plus interest on those sums;

(d) Judgment in favor of HDI Global Insurance Company and against NorGuard Insurance Company for all attorney's fees and costs incurred in this civil action to the fullest extent permitted by applicable law or Rule of Court; and

(e) An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

## COUNT IV
## DECLARATORY RELIEF AGAINST GUARD
## BAD FAITH
### (Duty to Indemnify Any Adverse Judgment or Settlement In the Cao Lawsuit)

166. Plaintiff incorporates by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

167. Under prevailing law, a primary insurer's duty of good faith is owed to excess insurance carriers as well as to the insured. *New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 607 (2nd Cir. 2003) (citing *Cont'l Cas. Co. v. Pullman, Comley, Bradley & Reeves*, 929 F.2d 103, 106-07 (2d Cir. 1991); *Pavia v. State Farm Mut. Auto Ins. Co.*, 82 N.Y.2d 445, 452, 626 N.E.2d 24, 27, 605 N.Y.S.2d 208, 211 (1993); *St. Paul Fire & Marine Ins.*

*Co. v. U.S. Fidelity & Guar. Co.*, 43 N.Y.2d 977, 979, 375 N.E.2d 733, 734, 404 N.Y.S.2d 552, 553 (1978)); *Scottsdale Ins. Co. v. Indian Harbor Ins. Co.*, 994 F. Supp. 2d 438, 450 (S.D.N.Y. 2014) ("A primary insurer also owes this duty of good faith to an excess insurer.").

168.　Guard deliberately and intentionally engaged in gross disregard of the interests of the excess insurer and its insureds, resulting in the loss of an actual opportunity to settle the claims against the Huangs in the Cao Lawsuit within the Guard Policy's primary policy limit.

169.　Further, after squandering the opportunity to settle the claims against the Huangs in the Cao Lawsuit within the Guard Policy's primary policy limit, Guard has refused to make that primary limit available to HDI thereby foreclosing the opportunity for HDI to resolve the claims against the Huangs in the Cao Lawsuit within the HDI XS Policy's limits and the stated demand.

170.　Guard's pattern of behavior demonstrates a conscious and knowing indifference to the probability that its insureds could be held personally accountable for a large judgment if the Guard Policy's primary limits were not offered to settle the claims against the Huangs or otherwise made available to the Huangs' excess insurer to settle the case.

171.　By way of example, and without limitation, during the six-year course of the litigation in the Cao Lawsuit, but prior to the March 2025 mediation:

(a)　Guard refused to consider Cao's likelihood of success on the liability claims against the Huangs in the Cao Lawsuit or the potential magnitude of damages and the financial burden the Huangs may be exposed to as a result of its refusal to engage in settlement negotiations or otherwise mediate and settle the claims against the Huangs;

(b)　Guard admittedly failed for over six-years to timely engage in any independent investigation or valuation of the claims against the Huangs in the Cao Lawsuit, and disregarded the advice and recommendations of its own appointed counsel as to the potential exposure presented by those claims against its insureds; and

(c)     Guard refused to make any offer of settlement or engage in any settlement negotiations to compromise the exposure the Haungs faced in the Cao Lawsuit, despite having access to information and recommendations by seasoned counsel that their potential exposure could exceed the Guard Policy's primary limit.

172.    After squandering, in bad faith, the opportunity to potentially resolve its insureds' exposure in the Cao Lawsuit for six-years, Guard then engaged in breathtaking bad faith conduct by deliberately precluding *any* settlement of those claims within the available insurance coverage.

173.    After being informed by Cao and the mediator in March of 2025 that a settlement was no longer possible within the Guard Policy's primary limit, Guard eschewed its good faith indemnity obligations by proposing that the excess insurer for the landlord, HDI, drop down and "partner" with it to settle the case so that Guard could "save money" off of its policy.

174.    Guard made this spurious proposal knowing full well that Guard alone insured the tenant (and the landlord as well on a primary basis), and that the landlord held contractual and common law rights to indemnity from the tenant which were insured exclusively under the Guard Policy.

175.    Hence, putting aside that Guard insures all of the defendants in the Cao Lawsuit, and that HDI only insures the Huangs on an excess basis, Guard knew there was no plausible support under the terms of the Guard Policy or any legal authority, anywhere, which would support Guard's expressed intention to "save money off of its policy" by "partnering" with the landlord's excess insurer and insisting that the excess insurer make an indemnity payment prior to the exhaustion or tender of the primary policy's limits.

176.    Guard deliberately and intentionally sabotaged and precluded a settlement of the Cao Lawsuit at mediation by conditioning any meaningful offer under its primary policy upon an

excess insurer dropping down from its attachment point and paying monies properly due and owing under Guard's primary policy.

177.     Having failed at that misguided attempt, Guard thereafter refused to make its primary policy's limits available to the Huangs and their excess insurer, despite being specifically informed by HDI that HDI was prepared to settle the claims in the Cao Lawsuit (including those against Guard's policyholder) for an amount within the global settlement demand advanced by Cao at the mediation in March of 2025.

178.     Guard's refusal to tender its primary policy's limits to HDI at the March 13, 2025 mediation of the Cao Lawsuit, or thereafter at the scheduled subsequent mediations (all of which Guard unilaterally cancelled), has prevented a settlement of the Cao Lawsuit within the available excess insurance coverage under the HDI XS Policy and has now exposed Guard's insureds to an excess judgment.

179.     Guard made a calculated decision to gamble with its insureds' personal assets and their excess insurer's funds in order to further Guard's own financial self-interests.

180.     Guard otherwise engaged in text-book bad faith conduct at the mediation and post-mediation events as described hereinabove, including but not limited to:

(a)     Refusing to consider Cao's likelihood of success on the liability issues in the underlying action, or the damages he will present at trial;

(b)     Refusing to consider the potential magnitude of damages and the financial burden the Huang Defendants could be exposed to—including the loss of their lifelong investment in their property—as a result of Guard's refusal to settle the claim over the past six (6) years within the available primary limit of the Guard Policy or otherwise tender that limit to their excess insurer so that HDI could settle that underinsured exposure;

(c)     Admitting, without caveat, that it had completely failed to properly and timely investigate and evaluate the claim despite the passage of over six-years of litigation;

(d)      Repeatedly making misrepresentations of fact to the parties and mediator to deflect from its admitted bad faith handling of the claims against its insureds;

(e)      Representing to all parties and the mediator that it would mediate in good faith whilst having no intention of doing so;

(f)      Failing to engage in any meaningful settlement negotiations;

(g)      Blatantly disregarding the actual the information available to evaluate the settlement opportunities presented during the course of the past six (6) years and when each demand for settlement was made;

(h)      Purposefully thwarting any settlement of the Cao Lawsuit by refusing to make its limits available when it knew that HDI was prepared to settle the claim, albeit under reservation, within the stated demand once the Guard Policy's primary limit was tendered;

(i)      Deliberately exposing HDI to a limits indemnity payment by refusing to allow a settlement of the claim within the HDI XS Policy's limit; and

(j)      Deliberately exposing its insureds to a potential excess and uninsured judgment for its own financial benefit.

181.      Guard's overt and unconcealed effort to favor its own interests over that of its insureds or their excess insurer, together with its conscious and knowing indifference to the probability that its insureds would be held personally accountable for a large judgment if the Guard Policy's primary limits were not offered to settle the claims against the Huangs or otherwise made available to the Huangs' excess insurer to settle the case, constitutes bad faith as a matter of law.

182.      Guard's bad faith conduct has exposed the limits of the HDI XS Policy, as well as imperiled Guard's insureds' financial well-being.

183.      As a consequence of that bad faith conduct, Guard is now liable as a matter of law to indemnify the Huangs and their excess insurer, HDI, for any reasonable, non-collusive settlement they may reach to resolve their exposure in the Cao Lawsuit.

184.    As a further consequence of that bad faith conduct, Guard is now liable as a matter of law to indemnify any adverse judgment against the Huangs in the Cao Lawsuit.

185.    While there is no plausible or *bona fide* dispute concerning Guard's bad faith conduct, an actual and justiciable controversy exists regarding Guard's duty to pay any settlement or adverse verdict in the Cao Lawsuit by virtue of its bad faith breach of the covenants of good faith and fair dealing inherent in the Guard Policy.

186.    This Court has the power to declare rights, status and other legal relations under a contract either before or after a breach thereof, and whether or not further relief is or could be claimed.  28 USCS §2201 *et seq*.

**WHEREFORE**, plaintiffs HDI Global Insurance Company respectfully requests that this Honorable Court enter:

(a)    An Order declaring that NorGuard Insurance Company is obligated to indemnify any reasonable settlement of the claims against Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc*., Kings County Supreme Court Index No. 507925/2019;

(b)    An Order declaring that NorGuard Insurance Company is obligated to indemnify any adverse judgment against Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc*., Kings County Supreme Court Index No. 507925/2019;

(c)    Judgment against NorGuard Insurance Company and in favor of HDI Global Insurance Company for any sums HDI Global Insurance Company may advance to settle or satisfy, in whole or in part, any judgment against Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc*., Kings County Supreme Court Index No. 507925/2019, plus interest on those sums;

(d)    Judgment in favor of HDI Global Insurance Company and against NorGuard Insurance Company for all attorney's fees and costs incurred in this civil action to the fullest extent permitted by applicable law or Rule of Court; and

(e)    An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

## COUNT V
## DECLARATORY AND OTHER RELIEF AGAINST GUARD
### (Duty to Indemnify K&K for Its Contractual Indemnity Obligations to the Huangs)

187.     Plaintiff incorporates by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

188.     The Supreme Court, Kings County has entered summary judgment in favor of the Huangs and against K&K on the Huangs' contractual defense and indemnity claims against K&K.

189.     Consequently, K&K owes a full defense and indemnity to the Huangs for the claims in the Cao Lawsuit, and has been obligated to provide a defense to and indemnify the Huangs ever since the Huangs tendered their defense and advanced a demand for indemnity in the Cao Lawsuit to K&K and its insurer, Guard, on December 22, 2019.  See December 22, 2019 tender is appended hereto at **Exhibit "E"**.

190.     Guard, at all times, insured K&K for the contractual defense and indemnity obligations in favor of the Huangs under the Lease Agreement.

191.     In material breach of its insuring obligations under the Guard Policy, Guard has refused to indemnify K&K for its contractual defense and indemnity obligations in favor of the Huangs under the Lease Agreement, or otherwise assume the defense and indemnity of K&K's contractual indemnitees, the Huangs.

192.     HDI has paid Haungs' defense costs which are, and have been, the adjudicated responsibility of K&K to pay.

193.     HDI, as the Huangs' legal and equitable subrogee, has standing to enforce the judgment on their contractual indemnity claims against K&K and, consequently, K&K's insurer, Guard.

194. There exists a substantial, *bona fide*, actual and justiciable dispute regarding Guard's duty to defend and indemnify the defense costs HDI has incurred, and continues to incur, on behalf of the Huangs in the Cao Lawsuit under the Guard Policy.

195. There exists a substantial, *bona fide*, actual and justiciable dispute regarding Guard's duty to indemnify K&K for its contractual indemnity obligations to the Huangs in the Cao Lawsuit under the Guard Policy.

196. This Court has the power to declare rights, status and other legal relations under a contract either before or after a breach thereof, and whether or not further relief is or could be claimed. 28 USCS §2201 *et seq*.

**WHEREFORE**, plaintiffs HDI Global Insurance Company respectfully requests that this Honorable Court enter:

(a) An Order declaring that NorGuard Insurance Company was and is obligated to indemnify New K&K Laundromat Inc. for its adjudicated contractual defense and indemnity obligations in favor of Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019 under the NorGuard Insurance Company commercial liability policy issued to New K & K Laundromat Inc. and in effect on December 12, 2018;

(b) Judgment in favor of HDI Global Insurance Company and against NorGuard Insurance Company for all attorney's fees and costs incurred in the defense of Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019, plus interest on those sums;

(c) An Order declaring that NorGuard Insurance Company is obligated to indemnify any reasonable settlement of the claims against Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019;

(d) An Order declaring that NorGuard Insurance Company is obligated to indemnify any adverse judgment against Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019;

(e)     Judgment against NorGuard Insurance Company and in favor of HDI Global Insurance Company for any sums HDI Global Insurance Company may advance to settle or satisfy, in whole or in part, any judgment against Son Qun Huang and Ka Na Cao Huang in the civil action styled *Jie Cao v. Son Qun Huang, Kana Cao Huang, and K&K Laundromat Inc.*, Kings County Supreme Court Index No. 507925/2019, plus interest on those sums;

(f)     Judgment in favor of HDI Global Insurance Company and against NorGuard Insurance Company for all attorney's fees and costs incurred in this civil action to the fullest extent permitted by applicable law or Rule of Court; and

(g)     An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

Respectfully Submitted,

/s/ Joseph C. Marchese
JOSEPH T. PARERES
JOSEPH C. MARCHESE
**SILVERSON PARERES & LOMBARDI LLP**
170 Hamilton Avenue, Suite 310
White Plains NY 10601
Tel: 212.557.1818
Facsimile: 212.557.1336
*Attorneys for HDI Global Insurance Company*

Of Counsel:

LOUIS A. BOVÉ, ESQUIRE
**BODELL BOVE, LLC**
1845 Walnut Street, 11th Fl.
Suite 1100
Philadelphia, PA 19103
Tel: (215) 864-6600
Facsimile: (215) 864-6610
lbove@bodellbove.com